In the Matter of F. NEWELL GILBERT and MONROE M. SWEETLAND, Attorneys.

Third Department, January 17, 1924.

Attorney and client — disciplinary proceedings — attorney suspended for six months for professional misconduct, collusion, malpractice and conduct prejudicial to administration of justice.

Attorneys suspended from practice for the period of six months for professional misconduct, collusion, malpractice and conduct prejudicial to the administration of justice in an action for divorce, in which one of the attorneys appeared for the plaintiff and the other for the defendant.

DISCIPLINARY proceedings prosecuted by the district attorney of Albany county pursuant to directions of the Appellate Division of the Supreme Court, Third Department, and referred to Honorable George F. Lyon, Official Referee, to hear the evidence and report thereon, with his conclusions, to said court. (See 206 App. Div. 725.)

*Thomas J. Mangan,* for the respondent Gilbert.

*Charles H. Blood,* for the respondent Sweetland.

*Charles J. Herrick, District Attorney of Albany county,* designated by the court to prosecute such proceedings.

PER CURIAM:

A situation bearing all the ear-marks of a collusive divorce or the betrayal of a client was detected by the trial justice at the time of the trial. He sharply and unexpectedly confronted the respondents with the fact that he had detected the compromising situation. A paper in the handwriting of Gilbert, the attorney for the plaintiff, purporting to be the statement of a witness who had just testified against Gilbert's client, was in the possession of

Third Department, January, 1924.        [Vol. 207

the defendant's attorney, Sweetland, and had been used by Sweet-land to guide him in his examination of that witness. The trial justice recognized the handwriting of Gilbert. The witness was recalled and when questioned by the court stated that he had been employed by Gilbert. The statement, however, which was drawn up by Gilbert, purported to represent that the witness had been employed by the client of Sweetland. The only proof in the case justifying the divorce was that offered by this witness and his employee or agent. Gilbert's client, the husband, had sued for a separation on the ground of cruel and inhuman treatment. The wife answered by denial and counterclaim urging desertion as a ground for separation. An amended answer, however, was served and a further counterclaim was added, setting up allegations of adultery and asking for a divorce. A reply was served, setting up denials as to both counterclaims. The trial had every appearance of being a perfunctory presentation of evidence sufficient to meet the legal requirements in uncontested divorce suits. There was no cross-examination of the defendant's witnesses as to the act of adultery. The plaintiff was not present at the trial. He remained outside. The only witness sworn for the plaintiff was his mother, who was sworn simply for the purpose of testifying as to his income in order that the court might be able to fix the amount of money to be paid to the wife for the support of their only child, which was then in the custody of the wife. The custody of the child was an important consideration and apparently had led to the prosecution of the original separation actions, because the parties had been living apart for some time, living with their respective parents and each self-supporting. He was being paid wages to work on his father's farm and she was teaching school. The retention of the custody of the child by the wife was not resisted upon the trial, although the complaint had alleged the wife's unfitness. Apparently the parties had made an amicable arrangement of their differences so far as they could do so without the aid of the court.

Surely this was an occasion for the respondents to be conscious of the fact that a strong *prima facie* case of collusion had been disclosed, but neither of them sought to justify their conduct. They left the court room without attempting to do so. They were uneasy about it but withheld all effort at explanation until they were summoned to appear before this court. They were given an opportunity to make a voluntary statement. Each availed himself of that opportunity. A considerable time had elapsed since the trial and they had had plenty of time during that disturbing period to prepare themselves for a full and frank statement. No such

full and frank statement was made. A reference was ordered and then for the first time they presented a story which has so impressed the learned official referee that he has recommended the dismissal of the charges.

We are not convinced, however, that the referee has reached the proper conclusion. We think he has overlooked important aspects of the testimony, which, taken with the whole history of the case, convince us to the contrary. As we view the case, an action for separation, started by Gilbert, naturally precipitated the very thing which happened. The complaint was framed with such harsh allegations as would naturally prompt the wife to desire a divorce rather than to try such issues of cruel and inhuman treatment alleged against her and to risk the loss of the custody of her child. The plaintiff's mother had been asked by the wife to get an annulment of the marriage for her son and the mother had said, " it is up to you to get a divorce." The wife defended the separation action and employed Sweetland. The very first time Sweetland met Gilbert, upon a motion by the former for alimony and counsel fees, Sweetland suggests to Gilbert the possibility of getting a divorce against Gilbert's client. Gilbert assures him that such proof is obtainable and offers to be helpful. This was on March twenty-first. The act of adultery proved at the trial took place on March twenty-seventh. On April seventh Gilbert sent to Sweetland a letter telling Sweetland how to frame his allegations as to adultery in his counterclaim and intimated that the proofs would be supplied and which were supplied. It is difficult to see how Gilbert rendered any service to his client unless it was in making every effort to have a judgment of divorce rendered against his client. It is not difficult to believe that there was in fact collusion. The trial was a farce, delayed until Sweetland could get his counsel fees fully paid. Gilbert furnished the allegations and proofs after a talk with Sweetland and after a talk between Sweetland's client and the mother of Gilbert's client, of which Gilbert was informed. Gilbert wrote to Sweetland that he would bring the witnesses with him to the trial and he brought them with the plaintiff and his mother. The witness Beasly says he was hired in February but he had no data to show it and he had not discovered any proofs against the plaintiff until March twenty-seventh. His associate witness had not been out with him on this case before March twenty-seventh. The plaintiff's mother simply says she " might " have had a talk with Gilbert in February about watching her son. If it be true that she did have an advance talk with Gilbert on this subject it is more consistent with the

44

Third Department, January, 1924.                    [Vol. 207

facts of this case that there was a complete understanding at that time that this divorce should be arranged. Beasly says he was hired by Gilbert and did not suppose he was acting for the wife, but Gilbert wrote his statement for him and made it clearly appear that he had been acting for the wife. Gilbert wrote this statement twice and each time made it so appear and yet Gilbert now makes the astounding claim that he meant that Beasly was acting for the plaintiff's mother. The plaintiff says that when the detectives caught him in the room in the hotel, he went home and told his mother about it. They went together to the city and saw Gilbert and told Gilbert to allow the defendant to use the testimony. About a week later Gilbert framed the necessary allegations and sent them to Sweetland. About a week subsequent to that Gilbert prepared a reply to the counterclaim and had his client verify a reply denying the very act of adultery of which he had obtained proof and about which the son had come to his office to tell him. The son now denies that he actually committed adultery but the circumstances were such as to indicate that if not guilty of the act he must have been a party to a prearranged affair having every appearance of guilt on his part for the very purpose of obtaining a collusive divorce. This explains why the son had so unnaturally reported to his mother that he had been caught in a hotel room with a woman by the detectives. It is incredible that he would have done so if there had not been an understanding between them and an arrangement aided by Gilbert. To tie all these facts together we have the admission of Gilbert as to a conversation which his client's mother had with him in which she said: " My daughter-in-law came to me and wanted me to annul the marriage; then I said to her, it is up to you to get a divorce. She says, now if they want their divorce they can have it." This is strangely like a slip that proves the mother and son wanted to have the wife get the divorce all the time; that the wife had talked to the mother; that the mother had talked to Gilbert; that Sweetland talked to Gilbert after a conference with the wife; that Sweetland expected Gilbert to furnish the proofs; that subsequently the proof was arranged and supplied. We think the conduct of the son is consistent with a guilty knowledge that he was to be watched; that he approved of it, furnished the occasion and was a party to the collusion. We think that Gilbert was also a party to it. He sought to avoid suspicion by making it appear in the statement written by him that Beasly was hired by the wife. He did not count on having his handwriting detected nor on having Beasly admit to the court that Gilbert had hired him. He knew he was having his client swear falsely in verifying the reply denying the

act of adultery or that his client had feigned an act of adultery as a part of an arrangement to get a collusive divorce. In either event he was guilty of conduct prejudicial to the administration of justice.

If we are not to explain the son's conduct in having admitted his experience at the hotel to his mother on the theory that he had been a party to an arrangement, we can only explain his admission to her on the ground that she had been informed of it by Gilbert and confronted her son with it. If so, Gilbert hired a detective to spy upon his own client at the request of another, and when proofs were obtained which the attorney for the adverse party sought and which he agreed to supply, his client was in a very real sense forced to consent to the use of the proofs against him. Such betrayal of a client would be unprofessional conduct prejudicial to the administration of justice.

We think that the respondent Sweetland has concealed his true connection with this situation and that even if he took no active part in getting this collusive testimony and was uninformed as to the manner in which it was obtained, he had reason to know that he had made himself the agent of the defendant to have her husband watched by her husband's own attorney either with the son's consent or without it. In one case he was a party to a collusive divorce and in the other to a betrayal of a client. His attempted explanation that he did not obtain the testimony until the day of the trial and thus did not have the time for reflection which would permit him to appreciate that the date of the act proved was subsequent to his talk with Gilbert, is unavailing. He must have known that the arrangement with Gilbert was well designed to produce the very collusive case which has been imposed upon the court and which is frowned upon by the divorce law. He used the proofs furnished to him. He prepared his findings setting up a finding that on March twenty-seventh this act of adultery was committed. He presented these findings to the court. If he presented them at the time of the trial it is clear that he came there expecting to prove an act of adultery committed on March twenty-seventh. If he prepared them later and forwarded them to the court after he had had time for reflection, he deliberately availed himself of the forbidden proofs. He made no attempt to explain his conduct to Mr. Justice McCANN. When given an opportunity to make a voluntary statement to this court, no such theory of justification was advanced by him as has been presented by him before the official referee.

We think that both respondents have been guilty of conduct prejudicial to the administration of justice which requires the exercise of the disciplinary powers of this court. (See Judiciary

Law, § 88, subd. 2, as amd. by Laws of 1913, chap. 720.) Upon the whole case we feel called upon to severely censure each respondent and to expose their conduct in its true light as a punishment to them and as a warning to others. Taking into consideration the fact that respondents have been subjected to severe publicity and suffering for a considerable period during the pendency of these proceedings, we have concluded to order the suspension of each of the respondents from the office of attorney and counselor at law for a period of six months from the date of the entry and service of an order to that effect.

All concur; McCANN, J., not sitting.

The respondents F. Newell Gilbert and Monroe M. Sweetland are suspended from practice as attorneys and counselors at law of the State of New York for the period of six months from the date of the entry and service of a certified copy of the order to that effect to be entered herein. And the said respondents F. Newell Gilbert and Monroe M. Sweetland are each hereby commanded, during the said period of six months, to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another, and are each hereby forbidden, during said period of six months, to perform any of the following acts for compensation or reward, to wit: (1) To appear as an attorney or counselor at law before any court, judge, justice, board, commission or other public authority; (2) to give to another an opinion as to the law or its application or any advice in relation thereto. The court disapproves of the conclusions of the referee herein, and finds that the respondent F. Newell Gilbert and the respondent Monroe M. Sweetland are guilty of professional misconduct, collusion, malpractice and conduct prejudicial to the administration of justice.